**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LORINZO SAMPSON,** | ) | **CASE NO.  1:20 CV 741** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **CITY OF CLEVELAND, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court are the two dispositive motions:

1.    Defendant Donald Horvat's Motion to Dismiss, **Doc #: 9**, and

2.    Defendants Cuyahoga County, Christopher Little, Brandon Smith, and Barry Hickerson's Motion to Dismiss, **Doc #: 10**.[1]

For the following reasons, the Motions are **GRANTED** in part and **DENIED** in part.

**I.**

For Rule 12(b)(6) purposes, the Court construes as true all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff Lorinzo Sampson's favor.

On December 22, 2018, Lorinzo Sampson was attending a Christmas party at his uncle's home on 128th Street between Kinsman and Union Streets in Cleveland, Ohio.  While standing in the driveway drinking a non-alcoholic beverage, Sampson was approached by Defendant Donald Horvat, a plain clothes Cleveland Police Officer with the Neighborhood Impact and Community

---

[1]The County states that it is not bringing this Motion on behalf of individually named Corrections Officer Defendants Timothy Dugan and Nicholas Evans because they have not been served with process or appeared in this case.  Doc #: 10-1 at 1 n.1.

Engagement team (N.I.C.E.) who questioned him about a parked car nearby.  Doc #: 1-2

("Complaint" or "Comp.") ¶ 9.  Sampson stated that he did not know anything about the car or its

passengers and refused to answer further questions.  Id. ¶ 10.  Officer Horvat then issued Sampson

an open-container citation which Sampson refused to sign because he was holding a non-alcoholic

beverage.  Id.  Sampson, who thought he was being racially profiled, asked to speak with Officer

Horvat's supervisor.  Id.  Officer Horvat responded that Sampson had a right to speak with Officer

Horvat's supervisor, but he would have to be taken downtown to submit his complaint to the

supervisor in person.  Id. ¶ 11.  Sampson complied and was placed in the backseat of Officer

Horvat's unmarked car without handcuffs or any other restraints, and was transported to the

Justice Center for the purpose of submitting his complaint to Officer Horvat's supervisor.  Id.

At no time did Officer Horvat inform Sampson that he was under arrest.  Id.

When they reached the Justice Center, Officer Horvat and Sampson walked in together.

It was not until Sampson asked to speak with Officer Horvat's supervisor that Officer Horvat

called him a smart ass and placed him in handcuffs.  Comp. ¶ 11.  Officer Horvat stated that he

was going to fingerprint Sampson and throw him in a jail cell.   Id.  When Sampson was being

fingerprinted, he again asked to speak to a supervisor.  Id. ¶ 12.  Officer Horvat declined his

request, at which time an argument ensued during which Officer Horvat and named and unnamed

Corrections Officers, including members of the Special Response Team ("SRT"), slammed him to

the floor, punched him in the face and mouth repeatedly, severely stomped on him, and beat him

with a pepper spray can until they knocked out a tooth.  Id. ¶¶13-14.  They laughed and joked

during the beating calling Sampson "the Eric Garner tough guy" and "you're the tough guy MF"

and left him on the floor unconscious and bleeding.  Id. ¶ 15.  Sampson alleges that they purposely

beat him out of the view of all cameras, including body cameras.  Id.  ¶ 14.  After the beating,

Officer Horvat charged Sampson with violating Municipal Ordinance 617.07 Open Container

Prohibited, and Municipal Ordinance 605.03 Disorderly Conduct.  Id. ¶ 16.

Thereafter, Defendants removed Sampson's outer clothing, placed him in a cold, isolated,

unlit jail cell, tied his arms and legs to a restraint chair, and left him there for twelve hours.

Comp. ¶ 17.  Sampson, who has asthma, was having trouble breathing and requested an inhaler.

Id. ¶ 18. This request and all other pleas for medical attention and the ability to relieve himself

were ignored.  Id.  Sampson was denied food and water, and was left to defecate and urinate on

himself while being restrained to the chair.  Id. ¶ 19.  As a result of this treatment, Sampson lost a

tooth, suffered a dislocated finger, was denied asthma medication, temporarily lost eyesight, and

suffered neck and upper body injuries.  Id.  Upon release, Sampson's wife rushed him to the

emergency room at University Hospital in Cleveland.  Id.  Sampson was later diagnosed with Post

Traumatic Stress Disorder ("PTSD") caused by his treatment at the hands of Defendants.  Id. ¶ 20.

He is still a patient of psychotherapy and is prescribed medication for his PTSD.  Id.

At his trial in Cleveland Municipal Court held on March 20, 2019, Sampson was found not

guilty on both the open-container and disorderly-conduct charges.  Comp. ¶ 21.  The trial judge

stated, "If the incident had occurred in a suburb, [Sampson] would not have been arrested and

charged with crimes."  Id. ¶ 31.

On March 16, 2020, Sampson filed this case in state court alleging twelve causes of action:

three state law claims and nine federal claims.  Specifically, Sampson alleges a state law claim for

false arrest against Officer Horvat (Count I), battery against Officer Horvat and named and

unnamed County Corrections Officers (hereafter, "Corrections Officers") (Count V), and civil

liability for criminal acts against the Corrections Officers (Count XII).  Sampson alleges federal claims under 42 U.S.C. § 1983 for false arrest/false imprisonment against Officer Horvat (Count II), retaliatory arrest against Officer Horvat (Count XI), malicious prosecution against Officer Horvat and the City of Cleveland ("the City") (Count III), a "Customs and Policies" claim against the City and Cuyahoga County ("the County") (Count IV), an excessive force claim against the County and Corrections Officers (Count VI), a deliberate indifference claim against the County and Corrections Officers (Counts VII), retaliation against the County (Count VIII), a procedural due process claim against the County (Count X), and a substantive due process claim against the County (Count IX).

On April 6, 2020, Defendants removed the case to federal court.  Doc #: 1.  On May 8, 2020, the City filed an Answer.  Doc #: 8.  On May 13, 2020, Officer Horvat filed the pending Motion to Dismiss.  Doc #: 9.  On May 15, 2020, the County and Defendants Hickerson, Little and Smith (together, "County Defendants") filed their pending Motion to Dismiss.  Doc #: 10. Plaintiff timely filed a Response in Opposition to both motions.  Doc #: 11.  On June 29, 2020, the County Defendants filed a reply, Doc #: 15, and on June 30, 2020, Officer Horvat filed a reply, Doc #: 16.

**II.**

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012); *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1071 (S.D. Ohio 2013).  A court need not, however, credit bald assertions, legal conclusions, or unwarranted inferences.  *Kavanagh v. Zwilling*, 578 F.

App'x 24, 24 (2d Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007));

*see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Twombly*, 550 U.S. at 570. The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id*. at 555. Although Rule 12(b)(6) does not impose a probability requirement at the pleading stage, a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted). Simply reciting the elements of a cause of action does not suffice. *Iqbal*, 556 U.S. at 678.

## III.

### A.     State Law Claims (Counts I, V and XII)

In Count I, Sampson alleges a claim for false arrest/imprisonment against Officer Horvat. In Count V, Sampson alleges a claim for battery against Officer Horvat and the County Defendants. And in Count 12, Sampson alleges a claim of civil liability for criminal acts against "the individual Defendants." The alleged criminal acts are assault in violation of O.R.C. 2903.13(A)), felonious assault in violation of O.R.C. 2903.11(A)(1), interfering with civil rights in violation of O.R.C. 2921.45(A), unlawful restraint in violation of O.R.C. 2905.03(A), intimidation in violation of O.R.C. 2921.03(A), and dereliction of duty in violation of O.R.C. 2921.44(C)(2). The County Defendants seek dismissal of Counts V and XII based on statutory immunity, and all Defendants seek dismissal of the state law claims because they are time-barred by the applicable limitations statutes.

-5-

### 1.    Statutory Immunity

Ohio Revised Code 2744.03(A)(6) provides that employees of political subdivisions are personally immune from civil liability unless, among other things, their acts or omissions were manifestly outside the scope of the individuals' official responsibilities, or the employees' acts or omissions were carried out with malicious purpose, in bad faith, or in a wanton or reckless manner. *Lambert v. Clancy*, 125 Ohio St. 3d 231, 2010-Ohio-1483 (2010).

The Court finds the allegations in the Complaint, if proven true following discovery, may well show that the Corrections Officers acted outside the scope of their official responsibilities and/or carried out their actions with malicious purpose, in bad faith, or in a wanton or reckless manner.  On the other hand, if the Corrections Officers can prove, following discovery, that they acted in good faith, they may be found immune from civil liability for their actions.  In any event, whether the Corrections Officers are immune from civil liability involves a fact-intensive inquiry that cannot be resolved on a motion to dismiss.

Thus, the Court denies the motion to dismiss the state law claims against the Corrections Officers (Counts V and XII) based on statutory immunity.

### 2.    Statute of Limitations

The statute of limitations for Sampson's state law claims is one year following the date the claims accrued.  See O.R.C. 2305.11(A) (false arrest/imprisonment); O.R.C. 2305.11(B) (battery); O.R.C. 2307.60 (criminal acts liability).  Sampson does not dispute that these claims were filed nearly three months after the expiration of the limitations period.  He argues the Court should equitably toll the limitations period because the mental injuries he suffered caused him to repress

the incident until he was forced to cope with it through a combination of long-term psychotherapy and medication.

A litigant seeking equitable tolling bears the burden of establishing: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way. *McNeely v. Ross Correctional Inst.*, No. 06AP-280, 2006 WL 2949014 ¶ 12 (Ohio Ct. App. Oct. 17, 2006).  Mental incompetence is considered an extraordinary circumstance that may equitably toll the statute of limitations. *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011).  To show equitable tolling on the basis of mental incompetence, a party must demonstrate that (1) he is mentally incompetent, and (2) his mental condition caused his failure to comply with the limitations statute. *Id*. "A blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and the untimely filing is required." *Id*. at 741-742.  In any event, determining whether these elements are present is a fact-intensive inquiry, and the doctrine should be applied sparingly.  *Byers v. Robinson*, 2008-Ohio-4833, 2008 WL 4328189, at  ¶¶ 54-56  (citations omitted).

Sampson argues that, under the current conditions of police brutality against black victims like him, it is conceivable that he repressed his memory of his inhumane treatment until he was made to cope with it through a combination of psychotherapy and medication.  Doc #: 11 at 7. Furthermore,

> Only then was [Sampson] able to verify to anyone that he had been a victim of one of the worst kinds of racial injustice and physical abuse and that Defendant Horvat and others were responsible for his injury.  On discovery, Plaintiff's medical and mental treatment records will show that he filed his claim on March 16, 2020, within one year of his verification that he had been abused and injured by Defendants.

Id.

-7-

Sampson does not allege, in the complaint, how long his memory of the December 2018 incident was repressed before it came to light, and how soon he retained counsel and filed this case following his alleged epiphany. Additionally, he has provided no evidence, in the form of an affidavit or medical records, supporting his request for equitable tolling. Rather, he states that he will produce this evidence in discovery. Doc #: 11 at 7.

The Court finds that Sampson has identified circumstances in his opposition brief that may warrant equitable tolling. Doc #: 11 at 6-8. However, this defense to a limitations time-bar is procedurally improper. "It is 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *CNA Ins. Co., Ltd. v. Mentor Magnetic Imaging, Inc.*, No. 1:08 CV 241, 2009 WL 10688218, at *2 (N.D. Ohio Sep. 16, 2009) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007)). A plaintiff "cannot use an opposition brief as a vehicle to amend its Complaint." *Id*. (citing *Am. Motorist Ins. Co. v. Custom Rubber Extrusions, Inc*., No. 1:05 CV 2331, 2006 WL 2460861, at *11 (N.D. Ohio Aug. 23, 2006)). "This is not a 'technical mouse-trap for an unduly terse plaintiff–nothing prevents a plaintiff from moving to amend its complaint in the face of a well-reasoned motion to dismiss. *Id*. (citing *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). All that said, "[a] party that misses the deadline to amend its pleading *may still be permitted to amend*." *Id*. (quoting *Dykstra v. Wayland Ford, Inc*., 240 F. App'x 14, 15 (6th Cir. 2007)) (emphasis added).

As there is, as yet, no deadline for amending pleadings, the Court will hold in abeyance its rulings on all state law claims (Counts I, V and XII). The Court hereby directs Sampson to file, no later than 12:00 noon on Tuesday, September 8, 2020, an amended complaint and documentation (e.g., affidavit and medical records) supporting his position on equitable tolling.

Furthermore, the amended complaint must identify the specific defendants who are alleged to have committed each state law claim, and what each defendant did.

**B.     Federal Claims**

As a preliminary matter, Sampson has filed numerous claims against the individual defendants in their individual and official capacities.  "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."  *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Faith Baptist Church v. Waterford Twp.*, 522 F.App'x 322, 327 (6th Cir. 2013) (dismissing an official capacity claim against a public official because it was superfluous).  As the City and the County have been named as defendants, all federal claims brought against the individual defendants in their official capacities are hereby dismissed.  The Court will analyze all federal claims against the individual defendants in their individual capacities.

**1.     Individual Defendants**

Title 42, Section 1983 of the United States Code creates a cause of action against public officials who violate a person's constitutional rights while acting under color of law.  *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (citing 42 U.S.C. § 1983).  Section 1983 itself is not a source of substantive rights; it merely provides a method for vindicating federal rights elsewhere conferred.  *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009) (*citing Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Thus, the first inquiry in any § 1983 suit is to isolate the precise constitutional violation the defendant is alleged to have committed.  *Id*. (*citing Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

On the other hand, qualified immunity shields public officials from undue interference with their duties and from potentially disabling threats of liability.  *Harlow v Fitzgerald*, 457 U.S. 800, 806 (1982).  To determine at the pleading stage whether a defendant is entitled to qualified immunity, the court must determine (1) whether the factual allegations make out the violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of defendant's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The constitutional right must be "so clearly established at the time in question that a reasonable person in the defendant's position would have known that he was violating the plaintiff's constitutional rights." *Gregory*, 444 F.3d at 745.  Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the defense does not apply.  *Id*.

### a.    Officer Horvat

### i.    § 1983 False Arrest Claim    (Count II)

Officer Horvat asks the Court to dismiss Sampson's § 1983 false arrest claim against him.[2] To sustain a claim for false arrest under § 1983, a plaintiff must show the arresting officer lacked probable cause.  *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  O.R.C. 2935.26 allows a law enforcement officer to arrest a person for the commission of a minor misdemeanor only when the alleged offender refuses to sign the citation.  However, in order to issue a misdemeanor citation in the first place, the officer must have probable cause.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

---

[2]Sampson alleges this claim against "Arresting Officers" from the City of Cleveland. Comp. ¶¶ 116-123.  As Officer Horvat is the only Cleveland Police Officer who arrested him, the Court treats this claim as one brought against Officer Horvat alone.

Sampson alleges he was standing in his uncle's driveway during a Christmas party holding a non-alcoholic beverage when Officer Horvat approached him. He alleges that he was arrested after refusing to sign an open-container citation that lacked probable cause. Sampson was subsequently acquitted of the open-container charge.

To these allegations, Officer Horvat states only that, at the time he stopped Sampson, Sampson "was standing outside and holding a beverage in an open container." Doc #: 9 at 6. But it is not unlawful to stand outside and hold a beverage in an open container. It must be an alcoholic beverage. Officer Horvat counters that whether or not the beverage contained alcohol is "irrelevant." Id. at 9. In other words, it does not violate the constitution to arrest someone for failing to sign a misdemeanor citation that clearly lacks probable cause. The Court disagrees.

Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded the actions taken were unlawful. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Arresting a citizen for not signing a citation that clearly lacks probable cause is a violation of the Fourth Amendment. This claim involves a factual dispute that cannot be decided on a motion to dismiss. If, following discovery, Sampson can show that Officer Horvat *knew* Sampson was holding a non-alcoholic beverage when issuing the open-container citation, and then arrested him for failing to sign it, Sampson may well make out a Fourth Amendment false arrest claim against Officer Horvat.

Thus, the motion to dismiss this claim is denied.

### ii.     § 1983 Retaliatory Arrest Claim   (Count XI)

In addition to the § 1983 false arrest claim, Sampson alleges that Officer Horvat violated his First Amendment rights by arresting him in retaliation for asking to speak to Officer Horvat's

-11-

supervisor to submit a complaint.[3]

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 256, 259 (2006)).  If an official takes adverse action against an individual based on that forbidden motive, and non-retaliatory grounds are insufficient to provoke the adverse consequences, the injured person may seek relief by bringing a First Amendment retaliatory arrest claim against that official.  *Id*.  To prevail on a § 1983 retaliatory arrest claim, a plaintiff must establish a causal connection between the official's retaliatory animus and the plaintiff's subsequent injury.  *Id*.  In other words, the motive must cause the injury.  *Id*.  If probable cause supports the arrest, a claim for retaliatory arrest fails.  *Id*.

Officer Horvat argues that "the existence of probable cause for Sampson's arrest–his refusal to cooperate with Officer Horvat and refusal to sign the citation–defeats Sampson's retaliatory arrest claim as a matter of law.  Doc #: 9 at 11.  Sampson alleges that Officer Horvat transported him, absent restraints, to the County jail as a ruse to speak to Officer Horvat's supervisor, when Officer Horvat, in fact, intended to arrest him and did so in retaliation for Sampson's refusal to sign an open-container citation that lacked probable cause.

Arresting Sampson for refusing to sign a citation that lacks probable cause, and doing so in retaliation for requesting to speak to Officer Horvat's supervisor, is a violation of the Fourth Amendment.  This claim involves a factual dispute that cannot be decided on a motion to dismiss.  If, following discovery, Sampson can prove that Officer Horvat arrested him in retaliation for

---

[3]Sampson also brings this claim against the Corrections Officers; however, the Corrections Officers did not arrest him.

asking to speak to Officer Horvat's supervisor, and probable cause did not support Sampson's arrest, Sampson may well make out a retaliatory arrest claim.

The motion to dismiss this claim is denied.

### iii.    § 1983 Malicious Prosecution Claim    (Count III)

Officer Horvat asks the Court to dismiss Sampson's Fourth Amendment malicious prosecution claim.  The Court declines to do so.

To establish a federal malicious prosecution claim, a plaintiff must establish (1) a criminal prosecution was initiated against him, and the defendant made, influenced or participated in the decision to prosecute, (2) probable cause for the prosecution was lacking, (3) the plaintiff suffered a deprivation of liberty apart from the initial seizure, and (4) the criminal prosecution was resolved in plaintiff's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

It is undisputed that a criminal prosecution was initiated against Sampson and the prosecution was resolved in his favor.  Sampson alleges that Officer Horvat influenced or participated in the decision to prosecute him by charging him with trumped-up offenses, one of which lacked probable cause (open container) and the other after Officer Horvat witnessed or participated in Sampson's beating (disorderly conduct).  Finally, Sampson alleges that he suffered a deprivation of liberty apart from the initial seizure by being tortured in a restraint chair for twelve hours and by being forced to defend himself against baseless charges several months later.  Should Sampson be able to prove these allegations following discovery, he may well make out a malicious prosecution claim.

The motion to dismiss this claim is denied.

-13-

### b.  Corrections Officers Little, Smith and Hickerson

#### i.  Excessive Force Claim   (Count VI)

In Count VI, Sampson alleges that approximately one dozen corrections officers either subjected him to excessive force in retaliation for asking to speak to Officer Horvat's supervisor, or stood by and failed to take basic, appropriate steps to protect him from the use of force.  Comp. ¶¶ 144, 146.  The Fourth Amendment protects citizens against unreasonable seizures, including the use of excessive force by law enforcement officers.  *Stewart v. City of Euclid, et al.*, No. 18-3767.

Sampson alleges that after he was handcuffed and asked to speak to a supervisor, the Corrections Officers tackled him and slammed him to the concrete floor, punched him in the mouth and face repeatedly, severely stomped on him and beat him with a pepper spray can until they knocked out a tooth, and left him on the floor unconscious and bleeding.  Comp. ¶¶ 11-14. He alleges that they purposely turned their body cameras off or beat him in an area out of the view of cameras.  Id. ¶ 14.  Sampson alleges that the Corrections Officers laughed and joked while beating him and called him "the Eric Garner tough guy" and a "tough guy MFr."  Id. ¶ 15. Following this treatment, the Corrections Officers removed his outer clothing, strapped him to a restraint chair, and put him in a cold, unlit cell for twelve hours.  Id. ¶ 17.  They ignored his pleas for medical help, provided no water or food, and left him in the restraint chair sitting in his own excrement.  Id. ¶ 18.

Although these allegations are disturbing, there are two problems with this claim.  First, to state a cognizable § 1983 claim, Sampson must allege some personal involvement by each of the named defendants.  *Bennett v. Schroeder*, 99 F.App'x 707, 712-13 (6th Cir. 2004).  Sampson has

identified five Corrections Officers involved in this incident, four John Does and one Jane Doe. But Sampson does not indicate how he knows the names of the five Corrections Officers he identifies and what exactly they did to him.  Second, Sampson cannot allege a claim against *both* the County and the Corrections Officers in a single count.  These are very different claims with vastly different legal standards.

Because the deadline for amending pleadings has not been established, the Court will give Sampson one opportunity to amend his complaint to separate and provide support for both excessive force claims, and to state with particularity the conduct used by the individual Corrections Officers, i.e., 12:00 noon on Tuesday, September 8, 2020.

The motion to dismiss this claim is denied.

### ii.    Deliberate Indifference    (Count VII)

The Corrections Officers asks the Court to dismiss the deliberate indifference claim.  The Eighth Amendment's prohibition against cruel and unusual punishment provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs.  *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008) (citation omitted).  The determination of whether a state actor acted with deliberate indifference in violation of the Eighth Amendment consists of an objective and subjective inquiry.  *Smith v. Erie Cnty. Sheriff's Dep't*, 603 F.App'x 414, 419 (6th Cir. 2015).  The objective criterion requires a plaintiff to show a sufficiently serious medical need, whereas the subjective requirement demands a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required.  *Id*. (inner quotations omitted).

-15-

Sampson alleges he was gratuitously beaten up while handcuffed to the point of unconsciousness by the Corrections Officers, which beating caused him to lose a tooth, suffer a dislocated finger, suffer temporary blindness and soft tissue injuries, and resulted in PTSD for which he is being treated with counseling and medication today.  He alleges that the Corrections Officers purposely left him in the restraint chair for twelve hours ignoring his pleas for medical attention to further agonize him, and they failed to provide his basic nutritional needs, i.e., food or water.

The Court finds that Sampson has provided sufficiently detailed allegations which, if proven true following discovery, satisfy both the objective and subjective criteria of a deliberate indifference claim.  That is, Sampson has suffered a serious medical need, and the Corrections Officers' alleged actions far surpass negligence.

However, as with the excessive force claims, Sampson must amend the complaint to separately assert his deliberate indifference claims, i.e., one against the County one and against the Corrections Officers; and he must state with particularity the specific actions or inactions of each Corrections Officer as best he can.

### 2.    Municipal Defendant–Cuyahoga County

While municipalities are "persons" for purposes of § 1983, they cannot be found liable merely because one of their employees violated a citizen's constitutional right. *Monell v. Dep't of Soc. Servs. of City of New York*, 435 U.S.658, 690 (1978).  In other words, a municipality has no vicarious liability for its employees' unconstitutional conduct.  *Id*. ("a Municipality cannot be held liable under § 1983 on a respondeat superior theory.")  For a municipality to be liable under

-16-

§ 1983, the plaintiff must show that "the entity itself is a 'moving force' behind the deprivation." *Kentucky v, Graham*, 473 U.S. 159, 166 (1985) (citations omitted).

The Sixth Circuit has recognized several ways to establish a *Monell* claim. A plaintiff may look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; (4) a custom of tolerance or acquiescence of federal rights violations.  *Id.* Additionally, a plaintiff may establish a *Monell* claim by showing that the municipality ratified its employee's constitutional violations by failing to meaningfully investigate and punish allegations of unconstitutional conduct.  *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6ᵗʰ Cir. 1989). For a *Monell* claim to be viable, the municipal action or inaction must have been the moving force behind the constitutional harm.  *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 607 (6ᵗʰ Cir. 2007) (citing *Monell*, 436 US. at 694).  With this standard in mind, the Court turns to Sampson's *Monell* claims against the County.

> **a.      § 1983 Excessive Force Claim   (Count VI)**

The County asks the Court to dismiss Sampson's excessive force claim against it because the Complaint "falls short of plausibly suggesting liability of any of the Corrections Officer Defendants."  Doc #: 10-1 at 5.  However, as the Court has found *infra*, at 14-15, the Complaint alleges facts supporting an excessive force claim against the Corrections Officers.  The question now is whether the factual allegations against the County are sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 570.

Sampson alleges the excessive force used against him was part of a recurring pattern of excessive force used on numerous people in custody at the County jail that occurred during a

-17-

relatively short span of one year, 2018.  Comp. ¶ 145.  Furthermore, the unconstitutional conduct created a toxic culture that desensitized corrections personnel to brutal, sadistic violence at the jail, and was so tolerated or ratified by the County that it became "wholly unremarkable." Id. ¶ 147.  Moreover, the culture of violence was apparent to federal investigators who assessed the facility in the year 2018–the same year Sampson alleges he was victimized.  Id.

In 2018, in response to six deaths that occurred at the County Jail over a very short period of time, County Executive Armond Budish asked the U.S. Marshals Service to conduct an investigation of conditions at the jail and provide a report.[4]  Comp. ¶¶ 149-150.  That report, entitled a Quality Assurance Review, found that the corrections staff were not utilizing the tools and techniques generally accepted as best practices for use of force ("UOF") teams to ensure staff and detainee safety, e.g., confrontation avoidance, removal of staff involved in UOF incidents from the immediate area, review of all incidents by the agency administrator.  Id. ¶ 150(a).  The investigation revealed that video tapes involving UOF were not being tagged and labeled as evidence, and written reports were not required from all corrections staff involved.  Id.  The tapes the review team watched revealed SRT members verbally abusing and demonstrating aggressive behavior toward the detainees/inmates.  The interview of over 100 detainees/inmates revealed strong and consistent allegations of brutality, excessive punishment, and cruel treatment at the hands of the SRT, whom the detainees/inmates referred to "The Men in Black" based on their black para-military uniforms.  Id. ¶ 150(b).  The review team members themselves *actually witnessed* the SRT threatening, intimidating and treating aggressively the detainees/inmates they

---

[4] See http://executive.cuyahogacounty.us/en-US/US-Marshal-QA-Review.aspx. November 21, 2018.

were escorting to the review team for interviews – motivating the team to demand the removal of

10 detainees/inmates from the jail out of fear of SRT retribution.  Id. ¶ 150(d).

　　　　The Complaint also alleges numerous incidents of excessive force used on other

detainees/inmates that mirror the treatment Sampson received at the hands of named and unnamed

Corrections Officers–all of which occurred in 2018.  See, e.g., Comp. ¶¶ 43-58 (Chantelle Glass);

id. ¶¶ 59-62 (Blanche Hill); id. ¶¶ 64-74 (Tyrone Hill); id. ¶¶ 75-81 (Glenn Mayer); id. ¶ 86

(Timothy Bennett); id. ¶ 87 (Corrionne Lawrence); id. ¶¶ 90-93 (Antoine Blackshear); id.

¶¶ 102-107 (Terrence Debose); id. ¶¶ 95-101 (Margaret Jackintell)

　　　　For example, in February 2018, detainee Joshua Castleberry secreted an extra bologna

sandwich that he took to his cell.  See Comp. ¶¶ 35-42.  When this was discovered, he threw the

sandwich at a staff member.  After handcuffing Castleberry, corrections officers threw him to the

ground with such force that he lost three teeth, one of which went into his nasal cavity.  They then

placed him in a restraint chair and threw a mask over his head to conceal their assault from

medical staff.  The officers refused to let a nurse remove the mask to assess Castleberry's injuries.

Eventually, a member of the nursing staff got permission from the nursing supervisor to remove

the mask.  She called EMS, and Castleberry was transported to the hospital for surgery to remove

the tooth from his nasal cavity and reconstruct his face.  The next day at the monthly sheriffs

meeting, jail administrator Mills was asked about the incident.  His response, "I reviewed the

situation and the officers used appropriate force to the threat of what the incarcerated citizen was

using."  When Medical Director Dr. Thomas Tailman asked to view the security footage, Mills

refused, saying, "I already reviewed it–nothing was done wrong."  Former Sheriff Clifford

Pinkney stated he would follow up with the incident, but when he went to review the footage, the

security and body-camera footage had "disappeared."  The assaulting officers were indicted for

second degree felonious assault, assault, unlawful restraint and interfering with civil rights. According to Sampson, no one was held accountable.

Sampson does not state the source of these particular allegations related to Joshua Castleberry,[5] or the source of similar allegations made by other detainees/inmates in 2018, but the Court has reviewed the electronic case management filing system in the Northern District of Ohio, and has found four cases alleging similar conduct at the County jail.  Only one of the cases has settled, one has been remanded to state court, and the others are in the midst of litigation.

To survive a motion to dismiss a *Monell* claim, it is sufficient to allege numerous similar events occurring within a relevant time period and, of course, Sampson will actually need to prove they occurred.  When amending the complaint, Sampson needs to indicate the source of his allegations of similar conduct, e.g., a Department of Justice investigation, U.S. Marshal investigation, federal civil rights cases.

The Court finds that the Complaint sufficiently alleges a custom of tolerance or acquiescence of federal rights violations by the County.  *Id.*  They show the County ratified its employee's constitutional violations by failing to meaningfully investigate and punish allegations of unconstitutional conduct.  *Leach*, 891 F.2d at 1247.

The Court denies the motion to dismiss this claim.

### b.        § 1983 Deliberate Indifference Claim     (Count VII)

As above, the County asks the Court to dismiss the deliberate indifference claim against the County because the Complaint falls short of plausibly suggesting liability of any of the Corrections Officer Defendants.  Doc #: 10-1 at 5.  However, the Court has found, *infra* at 14-15,

---

[5]See *Joshua Castleberry v. Cuyahoga County*, et al., Case No. 1:20 CV 218, Doc #: 1.

-20-

that the Complaint sufficiently alleges a claim for deliberate indifference against the named and unnamed Corrections Officers.  The Court now finds that the Complaint alleges sufficient factual material supporting a deliberate indifference claim against the County.

In almost every instance of excessive force recounted in detail above, named and unnamed Corrections Officers and supervisors carried on their attacks and furthered the pain they caused with full impunity.  Assuming the truth of the allegations, the detainees/inmates were left in restraint chairs after significant beatings absent medical help or nourishment to perpetuate the pain they caused and to further agonize them.  Further, this conduct, all of which occurred in 2018, was either tolerated by the County, or the County failed to properly train and supervise its corrections officers to avoid this unconstitutional conduct.

The Court denies the motion to dismiss this claim against the County.

### c.    § 1983 Substantive Due Process Claim   (Count IX)

The County asks the Court to dismiss Sampson's substantive due process claim.  The Court agrees.

Substantive due process involves the right not to be subject to arbitrary or capricious action by a state either by legislative or administrative action.  *H.M. v. Board of Educ. of the Kings Loc. Sch. Dist.*, No. 1:14 CV 64, 2015 WL 4624629, at *3 (S.D. Ohio Aug. 3, 2015) (*quoting Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)).  Courts have recognized two types of substantive due process violations: the deprivation of a particular constitutional guarantee and actions that shock the conscious.  *Id. (citing Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220. 1228 (6th Cir. 1997).  Where a specific constitutional amendment provides explicit protection against a particular type of governmental behavior, that

-21-

amendment, and not the more generalized notion of substantive due process, should be used to analyze the claim. *Id*. (*citing County of Sacramento v. Lewis*, 523, U.S. 833, 840 (1998).

The Court finds that Sampson's Fourth Amendment excessive force claims and Eighth Amendment deliberate indifference claims both target a more particular type of governmental misbehavior than the generalized notion of substantive due process.

The motion to dismiss this claim is granted.

### d. § 1983 Procedural Due Process Claim (Count X)

Sampson alleges that the County violated his procedural due process rights by failing to respond to his grievance about the severe beating and administrative-segregation restrictions he suffered. But he fails to allege when and how he raised a formal grievance to the County.

The motion to dismiss this claim is granted.

### e. § 1983 Retaliation Claim (Count VIII)

To allege a First Amendment retaliation claim, Sampson must show (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) a causal connection exists between the protected conduct and the adverse action. *Perotti v. Medlin*, No. 4:05 CV 2739, 2009 WL 385573, at *10 (N.D. Ohio Feb. 13, 2009) (*citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Sampson asserts that the County created a policy or practice of permitting retaliation against incarcerated citizens for speaking out about abuse or corruption in the jail. Comp. ¶ 162. He asserts that when the corrections staff learned of the federal investigation into jail conditions,

the staff made no effort to hide their anger at those detained individuals who were cooperating with federal investigators.  Comp. ¶¶ 163-164.

Sampson does not allege that he cooperated with federal investigators who questioned him about his treatment while he was incarcerated, and the Corrections Officers Defendants punished him for answering their questions.  He simply asserts that his treatment is strikingly similar to the abusive treatment suffered by inmates who cooperated with federal investigators.  Id. ¶ 166.

Thus, the motion to dismiss this claim is granted.

> **f.  § 1983 "Customs and Policies Causing Constitutional Violations and Ratification"  (Count IV)**

In Count IV, Sampson alleges that all Defendants have a history of violating citizens' constitutional rights, making arrests without probable cause, and subjecting citizens to cruel and unusual punishment under similar circumstances.  Comp. ¶ 132.  Sampson also asserts that the City and the County have failed to adequately train and properly supervise their employees, and have ratified their unconstitutional conduct.  Id. ¶¶ 133-34.

This claim is redundant of Sampson's excessive force and deliberate indifference claims. Accordingly, the Court grants the motion to dismiss this claim.

**C.  Injunctive Relief**

In the Prayer for Relief, Sampson seeks injunctive relief, presumably to prohibit Defendants from engaging in similar tortious or unconstitutional conduct in the future.  The County Defendants ask the Court to dismiss the prayer for injunctive relief.  Doc #: 10-1 at 11-13. The Court agrees.

In the context of claims for injunctive relief, a plaintiff must show that he has Article III standing, i.e.,  he is under threat of suffering an injury in fact that is concrete and particularized,

-23-

and the threat must be actual and imminent, not conjectural or hypothetical.  *Sumpter v. Wayne County*, 868 F.3d 473, 491 (6th Cir. 2017) (inner quotations and citations omitted).  Past exposure to illegal conduct, unaccompanied by any continuing, present adverse effects, will not suffice to establish standing.  *Id*.  Thus, in *Sumpter*, the Sixth Circuit determined that a plaintiff who was subjected to four illegal strip searches in a one-month period several years ago, did not establish standing to seek prospective injunctive relief.  *Id*.  *See also Gaylor v. Hamilton Crossing CMBS*, 582 F.App'x 576, 579 (6th Cir. 2014) (the threat of prospective injury must be immediate and not premised upon past injuries alone).

The conduct alleged to have caused Sampson's injuries occurred over a period of two days in December 2018.  It is now 2020, and Sampson does not allege there is a threat of prospective injury that is immediate and not premised on past injuries alone.

Thus, the Court dismisses Sampson's request for injunctive relief.

## IV.

Based on the foregoing, the Court **HOLDS IN ABEYANCE** its ruling on the motions to dismiss the state law claims alleged in Counts I, V, and XII.

The Court **GRANTS** the motions to dismiss the federal claims alleged in Counts IV (customs and policies), VIII (retaliation), IX (substantive due process),  and X (procedural due process).

The Court **DENIES** the motion to dismiss the following federal claims against Officer Horvat in Counts II (false arrest), XI (retaliatory arrest), and III (malicious prosecution).

The Court **DENIES** the motion to dismiss the following federal claims against the County and the Corrections Officers alleged in Count 6 (excessive force) and Count 7 (deliberate indifference).

The Court **DIRECTS** Plaintiff to file, **no later than 12:00 noon on Tuesday, September 8, 2020**, an amended complaint that adequately alleges the facts he must prove to support his claim for equitable tolling of the statute of limitations, i.e., the specific medical condition he was suffering from and how that condition prevent him from filing his complaint in a timely fashion; separate excessive force and deliberate indifference claims against the County and the Corrections Officers with appropriate legal standards and sufficient particularity addressing each Corrections Officers' conduct.

      **IT IS SO ORDERED.**

                                          */s/ Dan A. Polster    August 20, 2020*
                                          **Dan Aaron Polster**
                                          **United States District Judge**